JOHN McCOOL, PLAINTIFF IN ERROR, v. WEST JERSEY
AND SEASHORE RAILROAD COMPANY. DEFENDANT
IN ERROR.

Submitted December 5, 1910—Decided September 14, 1911.

1. A traveler who, in approaching a three-track railroad grade
   crossing, stopped when his horse's head was ten or twelve feet
   from the nearest rail of the nearest track, upon which a freight
   train was passing, and waited before going forward until it had
   passed out of sight two hundred feet or more away behind a per-
   manent obstruction to the view, cannot be said to be negligent as
   a matter of law in not waiting for the freight train to get further
   away, when there was no evidence of any noise from it interfer-
   ing with the plaintiff's hearing at the time he started forward.
2. When from the evidence the jury may legitimately find that the
   view of a traveler approaching a three-track railroad grade
   crossing was so obstructed to his right by a permanent obstruc-
   tion that up to and at the last point at which he might reason-
   ably decide that it was necessary for him to give up looking to
   the right, and either look to the left or ahead for the footing of
   his horse, he could not see the train unknown to him approach-
   ing from the right at great speed, and without giving the statu-
   tory signals, and which struck his wagon as he was clearing the
   third track, the question of alleged contributory negligence of
   the plaintiff is for the jury.

On error to the Supreme Court.

For the plaintiff in error, *Wescott & Wescott.*

For the defendant in error, *Gaskill & Gaskill.*

The opinion of the court was delivered by

TRENCHARD, J. This writ of error brings up for review a
judgment entered upon a verdict directed for the defendant at
the Camden Circuit, in an action brought to recover damages
for injuries sustained in a crossing accident.

The verdict was directed for the defendant upon the ground
of the plaintiff's contributory negligence.

At the trial it appeared that the plaintiff was a young man
twenty-four years of age. In the month of October, 1907, he

was driving a light, covered delivery wagon, drawn by a slow, old horse, in an easterly direction along Kohler street, in South Gloucester, and came to the crossing of defendant's tracks, upon which both steam and electric trains are operated, the latter by the third-rail system. There are three tracks, all of them used for trains, and running northerly and southerly and at right angles to the street. As the plaintiff approached the crossing, his view of the tracks on the right-hand or southerly side was obstructed, first, by a board fence bounding the property of one Howlett, and extending for a distance of one hundred feet parallel to and about twenty-two feet distant westerly from the nearest rail of the first or westerly track. This fence was about six feet high, and obstructed a view of the tracks, but not of a train coming upon the tracks. Beyond the fence, and standing seven feet nearer to the tracks and running parallel therewith for a distance of seventy-five feet or more, was a high, tight sign board, the top of which was thirteen feet above the level of the rail, and which admittedly constituted a complete obstruction to the effective view of the track to the south.

The proofs show that a person traveling in the centre of Kohler street does not get a view of the tracks to the south for a sufficient distance to be of any practical use until he has at least reached a point forty-eight feet west from the nearest rail of the furthest track, which point is about twenty-four feet westerly from the nearest rail of the nearest track. At that point a person can see the railroad to the south far enough to give him a view of about six hundred and fifty feet of the easterly or third track, upon which an electric train of three cars was coming, unknown to the plaintiff, and admittedly without giving the statutory signals. Of course, from that point forward, the view down the track lengthens. About one thousand one hundred feet from the crossing the track curves towards the west.

As the plaintiff approached the crossing a freight train was passing on the westerly or nearest track, going south. It was a long train, made up of twenty-two cars, and drawn by a locomotive engine. The plaintiff testified that he stopped long

enough for the freight train to go one hundred or two hundred feet down the road. He says: "I waited for the freight train to get out of the way so I could have a clear vision of the track and see if there were any other trains coming."

Van Dexter, a witness called for the defence, testified that the freight train had got about two hundred yards from the Kohler street crossing when McCool started to go across, or when his horse got his feet on the first track; and again he says that the freight train had got one hundred or one hundred and fifty feet beyond the sign referred to when the horse's feet reached the nearest rail. The same witness further testified that when the horse stopped (short of the crossing), and while the freight train was passing, the horse's head was about ten or twelve feet from the nearest rail.

The plaintiff testified that, after waiting for the passing of the freight train to open up a clear view of the track, and then looking carefully both ways and listening, and seeing and hearing nothing, he proceeded slowly, continuing to look and listen, and the fact is that he reached the furthest track and his horse had got clear of it when the wagon was struck by the electric train coming from the south.

No contention is made, and in view of the proofs, none can be made, that the direction of a verdict can be justified because of want of proof of negligence of the defendant.

The verdict for the defendant was directed upon the ground of contributory negligence. It seems to have been rested upon the theory, and it is here contended, first, that the plaintiff started across the track while the freight train still blocked his view, or second, if that be not so, that careful observation upon the part of the plaintiff would have disclosed the approach of the electric train in time for him to have avoided the collision.

We are of opinion that there is no view of the evidence which renders the alleged contributory negligence of the plaintiff a court question.

Of course, if the evidence conclusively showed that the plaintiff attempted to cross while the freight train obstructed his view of the train approaching upon the other track, he

might well have been held guilty of contributory negligence barring a recovery, under the authority of *West Jersey Railroad Co.* v. *Ewan,* 26 *Vroom* 574, and *Pennsylvania Railroad Co.* v. *Pfuelb,* 31 *Id.* 278; *affirmed,* 32 *Id.* 287. We agree that it was open to the jury to find from some of the evidence that the plaintiff did that thing. But it was also open to them from other evidence, some of which we have recited, to find that when he attempted to cross, the freight train no longer obstructed his view. The evidence tends to show that he stopped when his horse's head was ten or twelve feet from the nearest rail of the nearest track, and upon which the freight train passed, a very good place for the purpose considering conditions present; that he waited there until the freight train had gone out of sight behind the sign board. The plaintiff in effect so testified, and he is corroborated by a consideration of the testimony as to the relative positions of the plaintiff, the sign board and the freight train at the moment the plaintiff started. It was, therefore, clearly open to the jury to find that when he started from his safe place of observation, the freight train no longer obstructed his view, but was so far in the distance that a reasonably prudent person might judge that it was time to go forward. There appears to have been no evidence, and there is in this case no necessary inference, that the freight train as it disappeared in the distance made any noise which interfered with the plaintiff's hearing at the time he started forward. No such contention is made by the defendant.

We are also of opinion that it cannot be said, as a matter of law, that careful observation upon the part of the plaintiff would have disclosed the approach of the electric train in time for him to have avoided the collision. It was necessary for him to make his observation once for all before entering upon the tracks, because he could not safely turn or retreat after he had once embarked upon the crossing. These tracks were dangerous places, and on both sides of the crossing were cattle-guards and other dangerous equipment of the third-rail system. It was reasonable to infer that from the place where he started his horse, after having stopped to look, to the place where he was when the train struck his wagon, he had a dis-

tance of about sixty feet to travel. Respecting his rate of speed, he had first to start his horse, which, of course, took some time, and then he proceeded at a walk until he got upon the middle track, when he discovered the electric train approaching, at which juncture he urged his horse into a trot. It is not unreasonable to infer that his average speed was not more than two and one-half miles per hour. Now, defendant's own evidence was to the effect that the speed of the train during the same time was about twenty-five miles per hour, and it was reasonable for the jury to infer from the fact of collision, in connection with the plaintiff's evidence as to his having a clear view, that the train must have been going faster than this, or the horse more slowly, or otherwise the train would not have caught him. The evidence on the part of the plaintiff was that the speed of the train was "very high," perhaps forty or fifty miles an hour.

Now, assuming that the train was going only ten times as fast as the vehicle, it would go six hundred feet while he was going sixty feet. At twenty times as fast it would go one thousand two hundred feet. But at any point beyond six hundred and fifty feet it would have been out of sight of the plaintiff if he had happened to stop when he first got a clear view. At any point beyond one thousand one hundred feet the train would have been on or beyond the curve, and hence more difficult, or impossible, to see. And so if he was a little nearer to the track, or, at the last point at which he might reasonably decide that it was necessary for him to give up looking to the right, and either look to the left or ahead for the footing of his horse, it is quite easy to conclude that notwithstanding the exercise of reasonable care, he was caught at the crossing, for the collision is reasonably attributable to the high rate of speed of the train, coupled with the absence of the appropriate signals.

We conclude, therefore, that the question of contributory negligence of the plaintiff was for the jury.

The judgment of the court below will be reversed and a *venire do novo* awarded.

*For affirmance*—THE CHIEF JUSTICE, SWAYZE, BERGEN, VOORHEES, JJ.   4.

*For reversal*—THE CHANCELLOR, GARRISON, TRENCHARD, PARKER, BOGERT, VREDENBURGH, JJ.   6.